UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RALPH MCLELLAN, :
    Plaintiff, :
  :
v. : Case No. 3:16-cv-2032 (VAB)
  :
CAROL CHAPDELAINE, ET AL., :
    Defendants. :

## INITIAL REVIEW ORDER

Plaintiff, Ralph Mclellan, is incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut ("MacDougall-Walker"). He has filed a complaint under 42 U.S.C. § 1983 against Defendants, Warden Carol Chapdelaine, District Administrator Angel Quiros, Captain Rivera, Lieutenants Richardson and Roy, Correctional Officers Lagassey, Gonzalez and Rule, Counselor Landolina, John Doe, John Doe #2, Jane Doe and Jane Doe #2. For the reasons set forth below, the Complaint is dismissed.

Under 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id*. Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

Mr. Mclellan claims that on June 29, 2016, at MacDougall-Walker, Correctional Officer Lagassey reviewed telephone calls made by Inmate Rivera to Lyzzenia Colon. After concluding that Inmate Rivera was using code names to refer to narcotics that he intended to receive during a visit from Lyzzenia Colon, Officer Lagassey began to investigate Inmate Rivera. Officer Lagassey allegedly believed that Mr. Mclellan's fiancée, Tina Seckington, was supplying the narcotics to Lyzzenia Colon. On June 29, 2016, Officer Lagassey allegedly issued Inmate Rivera a disciplinary report for conspiracy to convey contraband, and on July 14, 2016, Officer Lagassey allegedly concluded that Inmate River had been conveying narcotics into the prison through contact visits.

According to Mr. Mclellan, prison officials initiated an investigation into Inmate Rivera's suspected attempts to have Mr. Mclellan's fiancée deliver narcotics to Lyzzenia Colon to then be conveyed into the prison facility. On July 14, 2016, prison officials allegedly placed Mr. Mclellan on administrative detention pending the investigation. Mr. Mclellan alleges that, on July 15, 2016,

based on this investigation, Officer Lagassey issued Mr. Mclellan a disciplinary report for conspiracy to convey contraband.

Mr. Mclellan states that Lieutenant Roy and Captain Rivera were Officer Lagassey's supervisors. He states that he did not understand why he received the disciplinary report, and he maintains his innocence.

Mr. Mclellan allegedly asked Counselor Landolina to contact Tina Seckington to get a statement from her regarding her alleged involvement in the attempt to convey narcotics into MacDougall-Walker. Counselor Landolina allegedly never contacted Tina Seckington or any other individuals who could have been witnesses in connection with the disciplinary report issued to Mr. Mclellan.

As of July 26, 2016, Mr. Mclellan was allegedly permitted non-contact visitation with six individuals, including his fiancée Tina Seckington. At some point after July 26, 2016, and before August 2, 2016, prison officials allegedly de-activated Tina Seckington from Mr. Mclellan's visitor list.

Mr. Mclellan states that, on August 4, 2016, he participated in a hearing regarding his disciplinary report. Mr. Mclellan contends that Lieutenant Richardson did not provide him with any documentation in support of the disciplinary charge. He also states that Lieutenant Richardson denied his requests for a continuance and for a new advocate in order to secure witnesses. Lieutenant Richardson allegedly found Mr. Mclellan guilty of the charge of conspiracy to convey contraband and sanctioned him to fifteen days punitive segregation, sixty days loss of visits, sixty days loss of commissary and fifteen days loss of Risk Reduction Earned Credits.

Mr. Mclellan appealed the guilty finding. On September 9, 2016, District Administrator Quiros allegedly rejected the appeal because it was untimely and exceeded the number of pages permitted by the administrative directives.

On November 1, 2016, Mr. Mclellan allegedly wrote a letter to Captain Rivera requesting that Tina Seckington be re-activated to his list of visitors and alleging that she had been improperly removed. On November 7, 2016, Captain Rivera allegedly denied the request to re-activate Tina Seckington to Mr. Mclellan's list of visitors because an investigation had uncovered her involvement in the introduction of narcotics into MacDougall-Walker.

As a preliminary matter, Mr. Mclellan moves to add two exhibits to the Complaint. These motions are granted. The Clerk of the Court shall docket the exhibits attached to the motions as exhibits to the Complaint. The Court will consider the exhibits in conjunction with its review of the Complaint and attached exhibits.

**I.   Claims against Defendants Chapdelaine, Gonzalez, Rule and Doe**

Mr. Mclellan does not refer to Warden Chapdelaine, Correctional Officers Rule or Gonzalez or Correctional Employees John Doe, John Doe #2, Jane Doe or Jane Doe #2 other than in the caption of the complaint and description of the parties. As such, Mr. Mclellan has not alleged that they violated his federally or constitutionally protected rights. The claims against these Defendants are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**II.   Fourteenth Amendment – Due Process**

Mr. Mclellan alleges that Defendants Lagassey, Rivera, Roy, Richardson, Landolina and Quiros violated his Fourteenth Amendment procedural due process rights in connection with the issuance of the disciplinary report for conspiracy to convey contraband into the prison and the

4

imposition of sanctions after a disciplinary hearing.  To state a claim for violation of procedural due process in connection with sanctions imposed for a disciplinary infraction, an inmate must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law.  *See Sandin v. Conner,* 515 U.S. 472 (1995).

In *Sandin*, the Supreme Court reexamined "the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause." *Id.* at 474.  The Court explained that in the prison setting, liberty interests protected by Due Process will be "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  The Supreme Court held that the plaintiff's conditions of confinement in disciplinary/punitive segregation for thirty days did not present the type of atypical, significant deprivation in which a State might create a liberty interest.  Thus, an inmate has a protected liberty interest only if the disciplinary sanctions caused him to suffer an "atypical and significant hardship" in comparison to "the ordinary incidents of prison life." *Id.* at 485.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that when a state prisoner seeks damages in a section 1983 action, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction and sentence and if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.  In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court concluded that the holding of *Heck* applies to a prisoner's challenge to the procedures used in a disciplinary proceeding which results in a

5

change to the prisoner's sentence, including the loss of accumulated good-time credits. *See id.* at 648. Thus, a prisoner may not proceed with a section 1983 action challenging sanctions imposed pursuant to a disciplinary finding that affect the length of his or her sentence "unless he has shown that the sanction . . . ha[s] been overturned through administrative channels or by a state or federal court." *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006).

In *Peralta*, the Second Circuit considered a situation in which prison officials had subjected a prisoner to sanctions that affected the duration of his confinement as well as sanctions that affected only his conditions of confinement. The court held that the prisoner could proceed as to the sanctions that affected his conditions of confinement if he willingly waived any challenge to the sanctions that affected the duration of his confinement. The Second Circuit remanded the case to the district court to determine whether the prisoner had formally agreed to waive all claims challenging the duration of his imprisonment.

Here, Mr. Mclellan received multiple sanctions. The sanctions affected both Mr. Mclellan's conditions of confinement as well as the length of his prison sentence.

### A.  Loss of Risk Reduction Earned Credits

Mr. Mclellan alleges that the disciplinary hearing officer imposed a loss of 15 days of Risk Reduction Earned Credits. The loss of Risk Reduction Earned Credits is a sanction that affects the duration of the plaintiff's confinement. *See* State of Connecticut Department of Correction Administrative Directive 4.2A(4) (2013), available at www.ct.gov/dos/LIB/doc/PDF/AD/ad0402a.pdf ("RREC could affect an inmate's discharge date by five (5) days a month if in compliance."). Mr. Mclellan has not alleged that this sanction has been overturned or vacated. Thus, Mr. Mclellan may not proceed to the extent that he challenges

the sanction resulting in a loss of Risk Reduction Earned Credits.  That claim is dismissed without prejudice.  *See* 28 U.S.C. § 1915A(b)(1).

### B. Loss of Visitation and Commissary Privileges and Punitive Segregation

Mr. Mclellen alleges that the disciplinary hearing officer also imposed sanctions of sixty days loss of commissary privileges, sixty days loss of visitation privileges and confinement in punitive segregation for fifteen days.  The Court finds it unnecessary to reach a decision regarding whether it should permit Mr. Mclellan to waive all challenges to the sanction affecting the duration of his imprisonment pursuant to Second Circuit's instruction in *Peralta*, because it determines that the sanctions that affected Mr. Mclellan's conditions of confinement did not violate Mr. Mclellan's rights under the Fourteenth Amendment.

The Second Circuit has held that confinement in restrictive housing for less than 101 days does not constitute an atypical or significant hardship sufficient to state a claim under *Sandin*. *See Borcsok v. Early*, 299 Fed.Appx. 76, 78 (2d Cir. 2008) ("Even if we include the eleven days that [plaintiff] spent in SHU before the disciplinary hearing with the ninety days he received as part of his penalty, the duration of his confinement was neither atypical nor significant"); *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (101-day confinement in restrictive housing unpleasant but not atypical or significant); *Lewis v. Sieminski*, No. 3:08-CV-728 (JCH), 2010 WL 3827991, at *6 (D. Conn. Sept. 22, 2010) (noting that "decisions in the Second Circuit are unanimous that keeplock or confinement [in segregated housing] for 30 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*").  Mr. Mclellan spent at most twenty-two days in punitive segregation from July 14, 2016, the date he was placed in administrative detention, to August 4, 2016, the date of the disciplinary hearing.  Such a brief

confinement in restrictive housing does not constitute an atypical and significant hardship.

Although Mr. Mclellan also incurred various other sanctions affecting his conditions of confinement, the Court concludes that he either has no liberty interest in the privileges that were suspended or the duration of the suspension of those privileges did not cause him to experience an atypical or significant hardship. As indicated above, Mr. Mclellan lost commissary and visitation privileges.

As a preliminary matter, an inmate has no right to commissary privileges. *See Vega v. Rell*, No. 09-CV-0737, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) (It is well established that "[i]nmates have no constitutional right to purchase items from the prison commissary") (citing cases). Furthermore, a prisoner has no constitutionally protected right to contact or noncontact visits under the Due Process Clause of the Fourteenth Amendment. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (holding that"[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause").

In addition, courts within this Circuit have held that temporary deprivations of privileges, such as commissary trips and visitation, do not meet the standard of an atypical and significant hardship. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 381-82 (S.D.N.Y. 2011) (sanctions including confinement in restrictive housing unit and loss of visitation, telephone and commissary privileges for ninety days did not constitute cruel and unusual punishment in violation of Eighth Amendment) (collecting cases); *Principio v. McGinnis*, No. 05-CV-0856A(F), 2007 WL 2344872, at *2 (W.D.N.Y. Aug. 15, 2007 (inmate's sanctions of sixty days

in restrictive housing with loss of telephone and visitation privileges as well as loss of recreation did not constitute atypical sentence or unusual conditions that rose "above the *Sandin* threshold"); *Fine v. Gallow,* No. 3:97-cv-497 (SRU), 2000 WL 565232, at *9 (D. Conn. Mar. 28, 2000) (sanctions for two disciplinary reports, including thirty days loss of commissary privileges, did not constitute an atypical and significant hardship).  The Court concludes that Mr. Mclellan has not alleged that the loss of commissary and visitation privileges for sixty days subjected him to confinement under conditions that constituted significant or atypical hardship.

Because Mr. Mclellan has not alleged that the sanctions imposed pursuant to the guilty finding caused him to experience atypical or significant hardship or that he otherwise had a liberty interest in the privileges that were suspended as a result of the sanctions, he has not stated a claim of a violation of this due process rights under the Fourteenth Amendment.  As such, Mr. Mclellan has failed to state a claim of denial of due process against Defendants Lagassey, Rivera, Roy, Richardson, Landolina and Quiros in connection with disposition of the disciplinary report for contraband and the imposition of sanctions.   The Fourteenth Amendment procedural due process claims related to the sanctions imposed that affected Mr. Mclellan's conditions of confinement are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### III.    Fourteenth Amendment – Equal Protection

Mr. Mclellan claims that Defendants' conduct in connection with the issuance and processing of the disciplinary report and the removal of his fiancée from his list of visitors violated his "protections to Equal Protection under the Law…." Compl., ECF No. 1 at 7.  Mr. Mclellan asserts no facts in support of this claim.

The Supreme Court has recognized that "[t]he Equal Protection Clause of the Fourteenth

Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  In order to prove a violation of the Equal Protection Clause, a plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).  Thus, to prevail on an equal protection claim, a plaintiff must allege that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion or some other protected right.  *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation omitted).

A plaintiff may also state a violation of the Equal Protection Clause under the "class of one" theory.  To succeed on a "class of one" claim, a plaintiff must allege that "she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).   In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).

Mr. Mclellan does not allege that he was treated differently than other similarly situated inmates.  Nor does Mr. Mclellan allege that Defendants' decisions were made on the basis of a protected classification.  Thus, Mr. Mclellan has failed to allege facts to support a plausible equal protection claim against Defendants.  The Fourteenth Amendment equal protection claim is

dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

**IV.    Eighth Amendment**

Mr. Mclellan generally asserts that Defendants' conduct in connection with the issuance of the disciplinary report, the disciplinary hearing and the de-activation of his fiancée from his list of visitors violated the Eighth Amendment's protection against cruel and unusual punishment.  "[A] prison official violates that Eighth Amendment only when two requirements are met.  First, the deprivation must be, objectively, sufficiently serious . . . [Second,] a prison official must have a 'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991)).  Prison officials are required to provide for inmates' basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989).

Mr. Mclellan has not alleged facts to suggest that Defendants deprived him of any basic human needs.  *See Rhodes v. Chapman,* 452 U.S. 337, 347 (1980) (prisoner must demonstrate that his conditions of confinement alone or in combination resulted in "'unquestioned and serious deprivations of basic human needs . . . or . . . deprive[d] [him or her] of the minimal civilized measures of life's necessities" to satisfy objective element of Eighth Amendment claim); *Trammel v. Keane*, 338 F.2d 155, 164-65 (2d Cir. 2003) (if condition is not sufficiently severe or prolonged, it does not rise to the level of an Eighth Amendment violation).

Mr. Mclellan has no Eighth Amendment right to visit and buy items from the commissary or to have visitors in prison.  *See Roseboro*, 791 F. Supp. 2d at 381-82 (sanctions including confinement in restrictive housing unit and loss of visitation, telephone and commissary privileges for ninety days did not constitute cruel and unusual punishment in violation of Eighth

Amendment) (collecting cases); *Griffin v. Cleaver*, No. 3:03-cv-1029 (DJS)(TPS), 2005 WL 1200532, at *6 (D. Conn. May 18, 2005)) (inmate had "no constitutional right to telephone use, social visits and commissary privileges"). The allegations that Defendants violated Mr. Mclellan's Eighth Amendment rights fail to state a claim and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## V.     First Amendment and Fourteenth Amendment - Visitation

As noted above, a prisoner has no constitutionally protected right to contact or noncontact visits under the Due Process Clause of the Fourteenth Amendment. *See Thompson*, 490 U.S. at 461. Furthermore, the Supreme Court has held that the "withdrawal of visitation privileges for a limited period as a means of effecting prison discipline … is not a dramatic departure from accepted standards for conditions of confinement." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (two-year ban on non-contact and contact visitation not atypical) (citing *Sandin*, 515 U.S. at 485). At the time that Mr. Mclellan filed the Complaint, his fiancée had been de-activated from his visitors list for approximately five months. The five-month suspension of Mr. Mclellan's visitation rights with his fiancée does not constitute an atypical or significant hardship or violate his Fourteenth Amendment due process rights. The due process claim related to suspension of visitation privileges with Mr. Mclellan's fiancée is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Mr. Mclellan's allegations may also be construed as a claim that Captain Rivera violated his First Amendment right to association by suspending his non-contact visitation rights with his fiancée. The Supreme Court has observed that, "as our cases have established, freedom of association is among the rights least compatible with incarceration [and] [s]ome curtailment of

that freedom must be expected in the prison context." *Overton*, 539 U.S. at 131-37. To state a claim that a restriction on a visitation privileges violated the First Amendment right to association, a plaintiff must allege facts sufficient to demonstrate that the challenged restriction bears no "rational relation to legitimate penological interests." *Id.* at 131-32. In *Overton*, the Supreme Court upheld a two-year ban on all types of inmate visitation, other than with attorneys and the clergy, for inmates with two substance-abuse violations, because the regulation was rationally related to the legitimate penological interests in deterring drug and alcohol use in prisons as well as inducing compliance with the rules of inmate behavior. *Id.* at 134.

The alleged facts show that Mr. Mclellan received the disciplinary report for conspiracy to convey narcotics into the prison facility. An investigation revealed that Mr. Mclellan's fiancée was involved in attempting to assist another inmate's girlfriend to convey contraband into the prison facility, and Mr. Mclellan was found guilty of the infraction. The suspension of non-contact visits with Mr. Mclellan's fiancée was rationally related to the penological goal of deterring Mr. Mclellan from attempting to convey contraband into the prison or committing other violations of prison rules in the future. *See id.* at 134-35 (indefinite ban on visitation right of inmates with two substance abuse violations bore "a rational relationship to [] legitimate penological interest[s]"); *Marrero v. Weir*, No. 3:13-cv-28 (RNC), 2014 WL 4799228, at * 6 (D. Conn. Sept. 26, 2014) (removal of inmate's mother from his visitation list for twenty-two months or more as sanction for finding inmate guilty of conveyance of contraband into prison facility did not violate First Amendment because sanction was rationally related to legitimate security concerns); *Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 227-28 (W.D.N.Y. 2003) (revocation of inmate's visitation rights, which lasted roughly three years, served a legitimate

purpose—deterring visit-related misconduct and promoting internal security).

Furthermore, there are no allegations to suggest that Mr. Mclellan was not otherwise able to communicate with his fiancée by mail or telephone during the time period in question. *See Overton*, 539 U.S. at 135 (restriction on non-contact and contact visitation not unreasonable because inmates had alternative means of communication "with persons outside the prison by letter and telephone"). Accordingly, Mr. Mclellan has failed to state a claim of a deprivation of his First Amendment right to association, and that claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

The Court enters the following orders:

(1)     The Motions to Add Exhibit [**ECF Nos. 8 and 9**] are **GRANTED**. **The Clerk of the Court shall docket the exhibits attached to the motions as exhibits to the Complaint.** The Fourteenth Amendment procedural due process claim related to the loss of Risk Reduction Earned Credits is **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1). All other claims against Defendants are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The Motion for Preliminary Injunction and Temporary Restraining Order [**ECF No. 3**] is **DENIED** as moot.[1] The Court declines to exercise supplemental jurisdiction over any state law claims against Defendants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 715-26 (1966) (holding that,

---

[1] The Court does not address the motion for injunctive relief because it has dismissed the Complaint. This motion seeks a court order directing Defendants to permit Mr. Mclellan to reinstate visits with his fiancée. Even if the Court were to address this motion, the motion does not assert facts to demonstrate that Mr. Mclellan would suffer imminent harm if the motion was not granted and he was not permitted to engage in visitation with his fiancée. As indicated above, Mr. Mclellan has not alleged that he is precluded from contacting his fiancée in writing or by telephone.

where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts).

     (2)    The Clerk of the Court is directed to enter judgment for Defendants and close this case.

SO ORDERED at Bridgeport, Connecticut this 27th day of January, 2017.

                                      /s/ Victor A. Bolden
                                      VICTOR A. BOLDEN
                                      UNITED STATES DISTRICT JUDGE